THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. PEDRO CABRERA MERCADO, Defendant and Appellant.

No. 8800. Argued June 24, 1941.—Decided July 10, 1941.

*Gonzalo Sifre* and *Antonio J. Matta* for appellant. *Emilio de Aldrey, Acting Attorney General,* and *R. A. Gómez, Prosecuting Attorney,* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

The defendant was driving, in his capacity as locomotive engineer, an engine of Central Carmen. At a grade crossing over the highway, where there were no gates nor gatekeeper, the engine collided with a truck, killing Esteban Otero

Sánchez, who was traveling on the latter vehicle. The district attorney filed an information against Cabrera charging him with a violation of Section 328 of the Penal Code and alleging that the accident had been due to gross negligence and carelessness on the part of the defendant when driving said engine.

Upon being tried by a jury the defendant was found guilty, and after a motion for new trial had been denied he was sentenced to two years' imprisonment in the penitentiary. The present appeal has been taken from the order refusing a new trial and from the judgment of conviction.

 The first error assigned relates to the failure of the trial court to hold that the verdict was contrary to law and the evidence. Let us, then, examine the evidence.

Isabelo Boria Santana, who was the first witness for the prosecution, testified: That on the day of the occurrence he was driving a truck loaded with sand over the highway leading from Dorado to the ward of Higuillar. At Kilometer 3, Hectometer 3 there is a grade crossing and at both sides of it there are hills and shrubbery which obstruct the view, an engine becoming visible just when it crosses the road. As he was passing, going over the crossing, the train suddenly emerged. It was going rather fast. When he saw the engine it was already upon him. No bell or whistle was sounded. He did not notice the approach of the engine because he could not see it. The truck was traveling at 15 or 20 miles per hour, keeping to the right. The engine destroyed it, dragging it along. Otero was killed instantaneously, was found dead underneath the wagon. On cross-examination by defendant's attorney, he stated: That he has had 15 years' experience as a chauffeur and can judge the rate of speed of a vehicle; that the engine was traveling at about 35 kilometers and was pulling seven empty wagons; that on the front seat of the truck there were travelling a woman and a young lady who were unknown to him and who had asked

as a favor that he take them as far as he was taking the sand; that he was not talking to them as he did not know them; that at the place where the crossing is there is a slight grade on the road; that the signboard set up before reaching the grade crossing is scarcely visible on account of the thicket which obstructs its view.

Luis Rodríguez Valdejully testified: That he is a merchant; that on the morning in question he was going uphill in his car and heard the sound of an automobile horn; that on reaching the straight stretch of road, and before turning upon a curve, he saw the rear of the truck. That when he reached the bend of the road, about 50 meters away, he saw the engine dragging the truck. Before reaching the grade crossing there is a straight stretch of road, then there is a visible bend of the road towards the left; about 40 or 50 meters after reaching that stretch there is a grade crossing and a hill to the right which obstructed the view of the engine; that there was also at the time a grove of guava trees which also prevented seeing the engine as it moved over the track. Before the collision occurred, he heard nothing; he heard no whistle, only the truck's horn. As the truck was traveling at the rate of about 15 or 20 kilometers, loaded with sand, it could not avoid the accident. If the truck had not swerved to the left when he tried to pass it he would have been struck, as he would have gone on because he had not heard the noise of any engine or anything else. The engine dragged the truck about five or ten meters beyond the grade crossing. At the time of the accident there was no signboard at the crossing; now there is one. He has been traveling over that road for more than twenty years.

Félix Báez Santiago testified: That about 15 feet from the grade crossing a truck was traveling behind him sounding the horn. There is a hill there which prevents a view of the engine when coming from the central, as it was coming that morning. Further on there are thickets everywhere.

The engine was moving fast, as it was coming down a grade. He did not have any whistle, or anything else. The driver of the truck tried to avoid the collision and this explains why everybody was not killed. The engine can not be seen until it reaches the grade crossing. Subsequent to the accident a laborer from the central cut down the shrubbery on both sides.

Ramón Torres Nazario testified: That he saw the accident, as he was going close to the grade crossing. He saw the truck coming while it sounded the horn. When reaching the grade crossing the engine was traveling quite fast. On seeing the engine the driver of the truck tried to avoid the accident by swerving towards the left. The wood prevented said driver from seeing the engine and the engineer from seeing the chauffeur before reaching the grade crossing. He did not hear any whistle or bell. He saw Otero dead underneath one of the wagons attached to the engine. He did not notice if there was any signboard there. Now there is one.

Trinidad Aguayo testified: That he was on the truck in front. He did not know the man who was driving it. The engine collided with it on the grade crossing. Before the collision, he did not hear any whistle, or bell, or noise from the engine. On both sides of the grade crossing there were hills which prevented the engine from being seen. Another woman was also on the front seat of the truck. They were all traveling in silence.

Pedro Maymí testified: That at the moment of the accident he was traveling along the road about 14 or 15 feet from the grade crossing. On both sides there are hills which obstruct a view of the engine when coming from Vega Alta towards Dorado. Preceding the collision he failed to hear any whistle or bell or other sound from the engine. He saw when the truck swerved and the engine struck it on the side, killing Otero. The engine was travelling rather fast. Three or four years ago signboards existed there.

The evidence for the defendant was as follows:

Cecilio Pantoja, a brakeman on the train which caused the accident, testified: That he was standing on the last wagon. When approaching the grade crossing the engineer sounded the whistle, and farther on, at about 50 yards from the grade crossing, he again sounded the whistle. He also ran the bell. He saw the truck a short distance away. They were unable to see it before because there was an intervening hill that prevented it. A person on the train becomes aware of what happens at the grade crossing, only after reaching the latter. No one on the truck can see the engine. They saw the truck when the collision was already unavoidable. The train was going downhill, as there is a grade there.

Juan López, fireman of the engine, said: He was traveling on the engine with four wagons 100 meters away, the train blowing the whistle and ringing the bell and then the engine collided with the truck. He felt the collision and saw no more. At about 10 meters from the grade crossing the engine again sounded the whistle and rang the bell. When an engine approaches the grade crossing, the automobiles which travel on the highway can not be seen, as there is a hill that prevents it.

Ramón Claudio stated: That he was working on the hill drilling holes for quarrying stones. He heard the whistle of an engine which blew one long and two short blasts before reaching the grade crossing. He did not see the accident.

Gabriel Santana testified: That he was near the track heard one long and two short blasts from a whistle and about three seconds afterwards he heard a clash caused by something that had happened. He did not see the accident.

The defendant took the stand and testified: That he had been working as an engineer for over 20 years and that this was the first accident he had had; that at the place of the occurrence there is a slight grade; that he was quite fam-

iliar with the place, as he always worked on that road; that on that day he sounded the whistle in order to avoid any accident; that at that place he usually blows the whistle more regularly, as there is no visibility; that there one can only see a vehicle when one is already going upon the grade crossing; that he tried to do all he could, but the train could not be stopped, and it collided with the truck; that he tried unsuccessfully to bring the train to a full stop; that he applied the brakes in order to stop and avoid the collision when he was about 10 meters from the grade crossing; that he was able to see the truck when he was entering the grade crossing and it was then that he applied the brakes.

From the evidence, taken as a whole, a conflict arises as to the very essential fact of whether the defendant did or did not sound the whistle or ring the bell of the engine prior to his crossing the highway at the grade crossing. The jury whose duty it was to resolve such conflict did so against the defendant and gave credence to the witnesses for the prosecution who asserted, those riding in the truck as well as those traveling on foot along the highway, that prior to the accident no warning signals were heard. The conflict having thus been adjusted, a verdict of guilty had to be entered as the logical and natural result of such omission on the part of the defendant. The latter was familiar with the engine driven by him, with the track, and with the grade crossing; he knew that at such grade crossing there were neither gates nor gatekeeper to protect people traveling over the highway; he knew that the track sloped down before reaching the grade crossing; and he knew that those traveling along the highway could not see the train because of the hills and the shrubbery. To cross a highway under such circumstances, without giving previous warning to those traveling over the same, undoubtedly constitutes gross negligence or carelessness punishable under the provisions of Section 328 of the Penal Code.

The case of *People* v. *Rodríguez,* 47 P.R.R. 565, on which the appellant relies in his argument, presents facts and circumstances different from those of the case at bar. In the *Rodríguez* case the defendant moved for a bill of particulars which was supplied by the district attorney, and in which no allegation was made that the defendant had failed to sound the whistle, said defendant being exclusively charged, as constituting negligence, with the fact that he had not reduced the speed. The judgment was reversed because "such pre-caution (reducing the speed) is not always a duty when a train approaches a crossing in the open country, unless it is so required by the circumstances"; and, moreover, as the witnesses had not seen the engine prior to the collision, they could not estimate whether or not the defendant had slowed down. In the case at bar it was specifically alleged that the negligence consisted in the failure to either sound the whistle or ring the bell.

Inasmuch as the evidence believed by the jury was, in our judgment, sufficient to support the verdict, it is our duty to uphold the same.

██ In the second assignment it is alleged that the lower court erred in holding that the new evidence submitted by the defendant did not justify the granting of a new trial.

The motion for a new trial rested on the alleged discovery of new evidence which consisted of the testimony of Eugenio Báez, who was injured in the same accident, and of that of Celestino López.

Eugenio Báez in his testimony, which is attached to the motion, substantially said: That on the day of the accident he and Serafín Pizarro were traveling on the truck as help; that about five or six meters before reaching the grade crossing they saw the locomotive which was at that moment coming about twenty meters from the grade crossing; that Pizarro then started pounding the hood to warn the chauffeur that the engine was approaching; that the chauffeur went on

his way until the collision took place; that he can not say whether the engine sounded the whistle or rang the bell, because the truck had no muffler and made a lot of noise; that about eight or ten minutes after the collision a man—the witness Valdejully—arrived there on a small motorbus.

The testimony of Celestino López, who admits that he was not present when the accident occurred, tends to corroborate the witnesses for the defendant when he says that "I heard the engine of the train whistling," and to contradict the testimony of Valdejully when he says that the latter did not arrive at the place of the accident until seven or eight minutes after Eugenio Báez, who had been injured, was picked up.

We are of the opinion that the lower court did not err in denying the motion for a new trial. The new evidence, besides being cumulative and having been submitted with the evident purpose of impeaching the testimony of Valdejully, the principal witness for the prosecution, would not be sufficient, in our judgment, to change the result of the trial or to justify a different verdict from that which had been returned by the jury. Assuming it to be true that the workman Pizarro pounded on the hood of the truck to warn the driver of the approach of the train, such fact by itself is unimportant, because it was not accompanied by evidence to the effect that the driver heard and became aware of Pizarro's warning and was so negligent as not to heed it. The testimony of Eugenio Báez to the effect that he and Pizarro when about five or six meters from the grade crossing, saw the engine approaching about twenty meters from the grade crossing, is clearly in conflict with the whole evidence and especially with the testimony of defendant himself who said, with reference to the grade crossing: "There the view is obstructed; there one is able to see a vehicle or a danger when one is already near, going upon the grade crossing." Moreover, it is significant that the testimony of Pizarro, who

according to Báez was the person who warned the driver, has not been offered as new evidence.

In the third assignment it is alleged that it was error for the lower court to take judicial notice of a former testimony of Eugenio Báez. Let us see what occurred.

It appears from the order denying the motion for a new trial that Eugenio Báez had testified in the court below in a suit brought by the owner of the truck against Central Carmen and the insurance company to recover damages for the destruction of the truck; that the facts in that suit were the same as those in the criminal prosecution instituted against the locomotive engineer; and that the statements made by Báez in support of the motion for a new trial conflict with those made by him in the said suit, which corroborate the evidence for the prosecution in the criminal proceedings.

Was it error for the court to give no credence to the new testimony of Báez from its knowledge of something different that Báez himself had stated on another occasion before the same court? In our judgment, it was not error to do so. A motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the court. In order to be able to properly exercise such discretion the court can and must take notice of any fact or circumstance that might affect the credibility of the witnesses whose testimony is offered in support of such motion. We fail to see any violation of the rights of the defendant in the refusal to believe the testimony of a witness who on another occasion and before the same court and concerning the same facts, testified differently and in conflict of the testimony submitted as newly discovered evidence. The general rule laid down in *Aponte & Sobrino* v. *Heirs of Pérez,* 48 P.R.R. 437, invoked by the appellant, is not applicable to the case at bar. We would have considered the same as applicable, if Eugenio Báez had testified at the trial and the court *sua sponte*

had brought to the attention of the jury the testimony given in the civil action for damages.

■■ The first three assignments in the brief against the judgment appealed from are based on the alleged improper conduct of the prosecuting attorney in his address to the jury.

The only thing that we find in the record of the case appears from the certificate of the transcript of the evidence issued by the trial judge. It reads as follows:

"While the district attorney was referring in his argument to the absence of gates or chains on the grade crossing, counsel for the defendant called the attention of the court to the matter and objected to the district attorney further dwelling on the subject. The court then stated that in the instructions to be given to the jury the court would instruct them in that respect, for the defendant is not responsible at all for the absence of gates or chains on the grade crossing in question, and in that respect the responsibility, is upon third persons and not upon the defendant."

The appellant has failed to place us in a position to know, more or less exactly, what were the words used by the prosecuting attorney in referring to the absence of gates or chains on the grade crossing. From the evidence considered as a whole, it appears that there were none and that the only protection afforded to travelers over the highway was the placing of signboards with the legend: "Stop, look, and listen." The reference made by the prosecuting attorney to the absence of gates or chains and to the knowledge thereof on the part of the defendant did not show improper conduct on his part, for the knowledge on the part of the defendant that there were neither gates nor chains at the grade crossing made it incumbent upon him to be extraordinarily careful and to sound the whistle and ring the bell as a warning to travelers along the highway. We are not authorized to assume—and it is not claimed by the appellant—that the district attorney attempted to make the defendant responsible for the absence of gates

or chains. If the district attorney had committed such error, the defendant, who was assisted by counsel, could have applied for the discharge of the jury. The fact that no such request was made justifies the presumption that the district attorney did not commit the error imputed to him. In any event, the court duly protected the rights of the defendant by instructing the jury as follows:

"And the court instructs the jury before hand that the absence of gates or a gatekeeper at the grade crossing, as alleged by the prosecution, does not constitute negligence imputable to the defendant and must not take it into account."

The judgment appealed from must be affirmed.